```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION

Justina R. Scott,                    :

        Plaintiff,                   :

    v.                               :      Case No. 2:15-cv-3085

                                     :      JUDGE MICHAEL H. WATSON
Commissioner of Social Security,            Magistrate Judge Kemp

        Defendant.                   :
```

REPORT AND RECOMMENDATION

I.  Introduction

Plaintiff, Justina R. Scott, filed this action seeking review of a decision of the Commissioner of Social Security denying her application for supplemental security income. That application was filed on September 25, 2012, and alleged that Plaintiff became disabled on April 1, 2006. That date was later amended to May 23, 2011.

After initial administrative denials of her claim, Plaintiff was given a hearing before an Administrative Law Judge on September 30, 2014. In a decision dated November 25, 2014, the ALJ denied benefits. That became the Commissioner's final decision on October 30, 2015, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on February 26, 2016. Plaintiff filed a statement of specific errors on April 21, 2016, to which the Commissioner responded on August 10, 2016. Plaintiff filed a reply brief on August 23, 2016, and the case is now ready to decide.

II.  Plaintiff's Testimony at the Administrative Hearing

Plaintiff, who was 26 years old as of the date of the hearing and who has a high school education, testified as

follows.  Her testimony appears at pages 86-97 of the administrative record.

At the time of the hearing, Plaintiff was living in a household that included the father of her one-year-old child, his father, and the child.  She did not have a driver's license because she could not pass the test.  She had never worked although she had tried to find work.

When asked why she could not work, Plaintiff responded that the world was "out to get me."  She said that she was paranoid about everything and seldom left her bedroom.  She had been in counseling for more than a year and was struggling to find another counselor since her prior counselor left.  She took medication but did not believe it was working.  It also caused her to feel dopey for several hours after she awoke.  She had been diagnosed with ADHD and was still very distracted despite taking medication for that problem.  Finally, she suffered from bipolar disorder which was not being treated.

In terms of her usual routine, Plaintiff said that she typically stayed in her pajamas, did no meal preparation, did laundry infrequently, went out once or twice a month, and ran the sweeper once a week.  She had no hobbies.  She did see her mother and her two other children occasionally.  Reading was difficult for her and she did not use a computer or cell phone.  She had been in special classes at school.  She could not make change and had to be reminded to do simple things like brushing her teeth.

### III.  The Medical Records

The pertinent medical records are found beginning at page 303 of the record and can be summarized as follows.  Since the statement of errors focuses on mental health limitations, the Court's summary of the records will be limited to those which are relevant to that issue.

On June 7, 2011, Plaintiff underwent a medical necessity

assessment at Mid Valley Health Care and was hospitalized. She was reporting crisis levels of psychological symptoms. She had received mental health care in the past but was not currently on any medications. She showed moderate inattention at that time and acute depression accompanied by feelings of worthlessness and hopelessness. The form indicated that it was not typical of her to maintain attention and concentration, to work within a schedule, or to work close to others without distraction. She was diagnosed with bipolar disorder and PTSD; her GAF was 29 at the time and had not been higher than 42 in the past year. She was also described as having a significant impairment in almost all areas of functioning. Both medication therapy and counseling were recommended. (Tr. 349-62). She continued with treatment from that agency for a short period of time.

Chronologically, the next document is the report of a consultative examiner, Dr. Sisson, a psychologist, who saw Plaintiff on December 3, 2012. At that time, Plaintiff was on a waiting list for psychiatric care at Six County, Inc. Plaintiff told Dr. Sisson that she was depressed all the time and mostly wanted to be alone. She reported difficulty concentrating long enough to read, and she said she was always anxious. Her social presentation was in the normal range but her mood and affect were flat and occasionally tearful. She showed no clinical signs of psychosis. Dr. Sisson saw no evidence of significant intellectual impairment. She diagnosed a mood disorder, ADHD, and an anxiety disorder and rated Plaintiff's GAF at 60. Dr. Sisson concluded that Plaintiff could understand and follow instructions for basic work tasks, could maintain adequate concentration and attention (although she needed to be in an environment with minimal distractions), could relate to others on a time-limited basis, and could respond appropriately to work stress   (Tr. 452-63).

The next set of records are treatment notes from Six County, Inc. covering a brief period in late 2012. Plaintiff reported having trouble getting along with others, paranoid feelings, and difficulty sleeping. She was not currently taking medications but had been on lithium, Seroquel, and Trazodone in the past. She also reported symptoms of ADHD and PTSD. At the initial intake interview, her GAF was rated at 54, indicative of moderate symptoms. Medication evaluation and counseling were recommended. (Tr. 464-73).

Floyd Sours, a consulting psychologist, conducted an evaluation of Plaintiff on May 15, 2013. By that time, she had been in treatment at Six County for four or five months. She was still not taking medications. Plaintiff described various symptoms including depression, withdrawal, poor concentration, loss of interest, fatigue, irritability, poor sleep, and one suicide attempt. She was also anxious and had night terrors, apparently related to physical abuse by an ex-boyfriend. Mr. Sours observed that Plaintiff functioned in the borderline intellectual range and had less than marginal insight and marginal judgment. He diagnosed bipolar disorder, PTSD, and mild mental retardation, and rated her GAF at 59. Dr. Sours concluded that Plaintiff would have limitations in her ability to understand, remember, and carry out instructions in a work setting, to attend and concentrate, and to maintain appropriate behavior either around others or in dealing with the stress of a work situation. (Tr. 474-79).

The balance of the medical records consist primarily of treatment notes from Six County. They show that in early 2013 Plaintiff could not take psychotropic medications because she was pregnant. Many notes show that she was "doing OK" based on her self-reports. Lastly, there is a report interpreting the WAIS-IV testing which Plaintiff took in December, 2014. It showed a

full-scale IQ of 78, with a working memory score of 71 and a processing speed score of 74, which indicated that her ability to sustain attention and concentration and to process simple or routine visual material without making errors was in the borderline range. (Tr. 541-52).

State agency reviewers also evaluated Plaintiff's mental residual functional capacity. Dr. Goldsmith concluded, in his assessment dated December 17, 2012, that Plaintiff had moderate limitations in the areas of dealing with detailed instructions, completing a normal workday and work week without interruption from psychologically-based symptoms, interacting with the general public, coworkers, and supervisors, and responding to changes in the work setting. He thought she would do best with simple instructions and in a low-stress environment without unusual production quotas or high demands. She also was limited to occasional and superficial interpersonal contact and could do routine tasks with infrequent changes. (Tr. 112-14). Dr. Finnerty, in an evaluation dated June 3, 2013, reached much the same conclusion. (Tr. 127-29).

IV. The Vocational Testimony

Mark Pinti was called to testify as a vocational expert at the administrative hearing. His testimony begins at page 99 of the administrative record.

Mr. Pinti was first asked some questions about someone with Plaintiff's background and who could work at all exertional levels. However, the person could perform only simple, routine, repetitive tasks with only routine changes in the work setting and could not be held to strict production quotas or do fast-paced work. Moreover, the person could have only occasional interaction with the public and coworkers. Mr. Pinti said that someone with those restrictions could do some medium unskilled jobs like warehouse worker, floor waxer, and industrial cleaner.

He gave numbers for those jobs in both the regional and national economies.  Even if the person were more limited, needing to have any occasional changes in the work setting explained and demonstrated, and not being able to tolerate any interaction with the public, those jobs were still available.  Those jobs could not be done by someone who was off task for ten percent of the workday in addition to regularly scheduled breaks, however, nor would other jobs be available.

> V. <u>The Administrative Law Judge's Decision</u>

The Administrative Law Judge's decision appears at pages 64-77 of the administrative record.  The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff had not engaged in substantial gainful activity since her application date.  Going to the next step of the sequential evaluation process, the ALJ concluded that Plaintiff had severe impairments including affective disorder, anxiety disorder, and attention deficit/attention deficit hyperactivity disorder.  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform work at all exertional levels.  However, she could perform only simple, routine, repetitive tasks with only routine changes in the work setting and could not be held to strict production quotas or do fast-paced work, and she could have only occasional interaction with the public and coworkers.

With these restrictions, the ALJ concluded that Plaintiff could perform the jobs identified by the vocational expert, including warehouse worker, floor waxer, and industrial cleaner.  The ALJ further determined that these jobs existed in significant

numbers in the regional and the national economy. Consequently, the ALJ decided that Plaintiff was not entitled to benefits.

VI. Plaintiff's Statement of Specific Errors

In her statement of specific errors, Plaintiff raises these issues: (1) the residual functional capacity finding did not account for all of Plaintiff's mental health limitations; and (2) the ALJ erred by failing to consider one of the medical opinions of record. These issues are evaluated under the following legal standard.

Standard of Review. Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" Id. LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708

F.2d 1058, 1059 (6th Cir. 1983).

        A.   <u>The Residual Functional Capacity Finding</u>

Plaintiff's first argument is that there is a substantial inconsistency between Dr. Sisson's conclusions, based on her December 6, 2012 clinical evaluation, and the ALJ's residual functional capacity finding.  In particular, she asserts that although the ALJ purported to give Dr. Sisson's opinions great weight, he disregarded specific findings made by her, including her comments that Plaintiff could only maintain attention and concentration, and avoid anger outbursts, on a time-limited basis, and needed to be redirected to her tasks by appropriate supervision.  She argues that simply limiting Plaintiff to the performance of simple tasks does not take these particular limitations into account, and that the error is not harmless because an increased amount of inattentiveness would, as the vocational expert testified, render Plaintiff unemployable.

The Commissioner makes two conceptually separate responses to this argument.  First, the Commissioner notes that the ALJ did not give controlling weight to Dr. Sisson's report, but rather great weight, meaning that the ALJ explicitly declined to adopt it in its entirety.  Thus, even if there are inconsistencies between Dr. Sisson's report and the ALJ's ultimate conclusion, so long as the ALJ's resolution of those issues finds substantial support in the record, no error has occurred.  Second, the Commissioner asserts that much of the alleged conflict between Dr. Sisson's report and the ALJ's findings is based on Plaintiff's selective reading (or misreading) of Dr. Sisson's conclusions, and that the ALJ reasonably interpreted Dr. Sisson's report as suggesting only the limitations which the ALJ included in his residual functional capacity finding.  In support of this latter argument, the Commissioner notes that the state agency reviewers also gave great weight to Dr. Sisson's report, and they

reached the same conclusion as did the ALJ about Plaintiff's ability to function in the workplace. In reply, Plaintiff disputes the Commissioner's interpretation of Dr. Sisson's opinions, arguing that the ALJ did not set forth that interpretation in her decision, and again argues that an ALJ may not both give great weight to an evaluator's opinion and then inexplicably disregard portions of that opinion. In support of this latter argument, Plaintiff relies on the Court of Appeals' decision in Stacey v. Comm'r of Social Security, 451 Fed.Appx. 517 (6th Cir. Dec. 19, 2011), so the Court will begin its discussion with a review of that case.

 Stacey involved a claim for disability based on a back condition. The ALJ found that the claimant could do light work; the claimant asserted he was limited to sedentary work, which, if true, would have rendered him legally disabled. In ordering a remand, the Court of Appeals noted that "[t]he problem here is that we have no idea what the ALJ thought of a key piece of evidence," an opinion which limited the claimant to sedentary work. Id. at 519. The ALJ cited this opinion when summarizing the evidence, but ultimately adopted the opinion of a different physician, one of the state agency reviewers. The ALJ provided no explanation for why he chose one of these opinions over the other, and even though neither was a treating source, the Court of Appeals found that the ALJ had not provided enough of an explanation "'to allow the appellate court to trace the path of his reasoning.'" Id., quoting Diaz v. Chater, 55 F.3d 300, 307 (7th Cir. 1995). The court also noted that the fact that the state agency reviewer also did not consider the opinion about sedentary work heightened the need for the ALJ to explain his choice.

 There are a number of clear differences between that case and this one. Here, the ALJ not only summarized Dr. Sisson's opinion but explicitly assigned it weight, and the state agency

-9-

reviewers did the same.  Thus, while there might be a debate about whether the ALJ could consistently have given Dr. Sisson's opinion great weight and then failed (at least arguably) to incorporate some of her conclusions into the residual functional capacity finding, the Court has much more of a sense of the ALJ's reasoning here than did the Stacey court.  It simply cannot be said that it is impossible to know how the ALJ regarded Dr. Sisson's opinion, because she discussed it not only in her summary of the evidence but in the specific section of the decision dealing with residual functional capacity, she assigned it a specific amount of weight, and she considered in connection with other opinions, particularly those of the state agency reviewers, who themselves noted and relied on Dr. Sisson's opinions - another element that was missing in Stacey and which influenced that court's decision to grant a remand.  Cf. Moore v. Colvin, 2015 WL 2015 WL 5675805, *7 (S.D. Ohio Sept. 28, 2015)(finding a Stacey-type error where, because of an ALJ's failure to refer explicitly to three separate medical opinions, the court was "left with an inability to discern whether the ALJ discounted portions of these three State agency consultants' opinions for valid or invalid reasons, or simply ignored them altogether").

    Because the Court finds no error in the way the ALJ articulated her reasoning path, the question before the Court is whether the ALJ's residual functional capacity is supported by substantial evidence in the record.  Assuming that Plaintiff correctly characterizes Dr. Sisson's report as suggesting certain limitations on Plaintiff's ability to concentrate, maintain attention, and relate to others which are not included in the ALJ's final residual functional capacity determination, as the Commissioner points out, the ALJ gave great weight to the opinions of the state agency psychological reviewers, who, in their review of the records (including Dr. Sisson's report),

concluded that any limitations in Plaintiff's ability to concentrate could be accommodated by limiting her to the performance of routine and repetitive tasks in an environment where changes occurred infrequently and where interruptions from coworkers or the public occurred only occasionally and on a superficial level.  There are no treating source opinions here which contradict those findings.  The Court therefore finds that Plaintiff's first statement of error does not constitute a basis for reversal.

### B.  The Unconsidered Medical Opinion

Plaintiff's other statement of error relates to an earlier opinion rendered by Dr. Sisson in February, 2012.  That opinion is mentioned by the state agency reviewers but it is not part of the administrative record.  Plaintiff asserts that it was part of the "electronic file" and that the evaluation was considered by the state agency reviewers in connection with her current claim for benefits, but notes that the ALJ neither had it made an exhibit nor mentioned it in the administrative decision.  Because Dr. Sisson examined Plaintiff twice in the same year, Plaintiff contends that her opinions were entitled to additional weight, and that the ALJ made a procedural error by not including this opinion in the record.  She also asserts that the error was not harmless because the earlier opinion, which was summarized to some extent by the state agency reviewers, placed restrictions on Plaintiff's ability to function outside of a structured environment.

The Commissioner's response to this argument is as follows.  First, the current application for benefits was filed in September, 2012, making the February evaluation of less importance than the one Dr. Sisson performed in December of that year.  Second, it can reasonably be assumed that the second opinion superseded the first.  Finally, if the first opinion is read as being more restrictive than the second, that means that

-11-

those additional restrictions did not last for twelve months beyond the application date and cannot form the basis for a finding of disability.

The Commissioner has the better of this argument. Plaintiff does not argue that Dr. Sisson's February, 2012 evaluation was done in connection with the current claim for benefits, and she cites no authority for the proposition that consultative opinions rendered in connection with a prior claim for benefits must be made a part of the record or even that they must be considered by the ALJ. She appears to argue that such evaluations must be included in the record where, as here, the state agency reviewers rely on them (along with other evidence), but, again, she cites no authority indicating that this is a procedural requirement. Additionally, as the Court understands Plaintiff's argument, she is asserting that the ALJ might have come to a different conclusion about Plaintiff's residual functional capacity - meaning different from the conclusion that the two state agency reviewers reached, since the ALJ adopted their opinions on that subject - if she had reviewed the opinion in its totality, notwithstanding the fact that the reviewers both summarized Dr. Sisson's findings and, taking them into account along with her later report, concluded that Plaintiff retained the mental capacity to work (or, to be more precise, had the mental functional capacity to do certain types of work tasks which, as the vocational expert testified, would allow her to perform a significant number of unskilled jobs). The Court sees no likelihood that the ALJ's failure to make this evaluation a part of the record, or to discuss it explicitly, had any bearing on the ALJ's decision to afford great weight to the state agency reviewers' opinions and to adopt their conclusions on the issue of residual functional capacity. That is the standard for determining when an error is harmless. See, e.g., Kornecky v. Comm'r of Social Security, 167 Fed.Appx. 496, 507 (6th Cir.

2006)("'No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result'"), quoting <u>Fisher v. Bowen</u>, 869 F.2d 1055, 1057 (7th Cir. 1989). Consequently, the Court finds that this second statement of error also fails to support a remand.

### VII. Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be overruled and that judgment be entered in favor of the defendant Commissioner of Social Security.

### VIII. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

>                                    /s/ Terence P. Kemp
>                                    United States Magistrate Judge